Common Pleas Court of Hamilton County.

WILLIAM BUSCH V. CITY OF CINCINNATI.

Decided January 18, 1933.

*Howard T. Witherby,* for plaintiff in error.

*Harry R. Wernke* and *F. T. Bartlett,* for defendant in error.

DARBY, J.

The plaintiff in error (herein called the defendant) was convicted in the Municipal Court on an affidavit charging him with the violation of Section 74-53 of the Code of Ordinances of the city of Cincinnati, the charge being that while in control of a motor vehicle, a taxicab, he did—

"unlawfully fail to drive said vehicle in a careful manner, and with due regard for the safety and rights of pedestrians, drivers and occupants of other vehicles, and so as to endanger the life, limb and property of a certain person, to-wit, Edward Franks, he, the said Edward Franks then and there being lawfully upon the said street * * *."

The affidavit substantially follows the section, which provides:

"Vehicles and street cars shall be driven in a careful manner by the driver or operator thereof, with due consideration for the safety and rights of pedestrians, and drivers and occupants of other vehicles and street cars, and so as not to endanger the life, limb or property of any person lawfully upon the highways or streets of the city."

The sentence was a fine of $100.00, the extreme penalty, and suspension of driving rights for sixty days.

The importance of this case seems to justify an extensive statement of the evidence and of the ordinances which are involved.

The evidence shows that on February 22, 1932, about one a. m., the defendant was driving a taxicab south on Broadway from the Eighth street viaduct which he had just left, and was proceeding towards Sixth street; that at that time the signal lights at Sixth street were green, giving him the right of way to proceed, and at the time

he reached Sixth street and was crossing the intersection of Sixth and Broadway a vehicle of the Cincinnati Fire Department carrying the prosecuting witness and another, proceeded in an easterly direction from Sixth and Sycamore to Sixth and Broadway, and a collision occurred between the two vehicles in the intersection. Sixth street is a one-way street west from Broadway to Elm, under the ordinances of Cincinnati. Section 74-107 provides:

"The following streets shall be one-way traffic streets between the termini named:   *   *   *

"Section 74-107R.   Sixth street west from Broadway to Elm street."

At the time of the collision the red light at Sixth and Broadway was set against east and west traffic, though under the ordinances no traffic was permissible eastwardly between Sycamore and Broadway.

The claim of the city was that there was an alarm of fire about one o'clock on the morning in question, and that the engine company left the fire house at Seventh and Sycamore followed immediately by the automobile of Marshal Franks, which was followed by a ladder wagon company; that the three vehicles proceeded south to Sixth Street, turned east and that they were traveling about one hundred feet apart; that the bells and sirens on the three vehicles referred to were being sounded all the time, that the engine company passed the intersection of Sixth and Broadway, and that the defendant then drove his taxicab south on Broadway and into the path of the marshal's automobile, causing the collision between the two; that the taxicab was struck in the back by the marshal's car.

Evidence was offered by some witnesses for the city, to the effect that the taxicab was being driven at a rate of speed from forty-five to fifty miles an hour. The witnesses who gave the mileage agreed on those figures; others of the witnesses for the city were unable to state in miles the speed, but one referred to it as "terrific" and the other that it came as a flash.

The witnesses for the city who testified as to the speed of the marshal's automobile say that it started across the

intersection at about thirty miles an hour, though one of them, said between twenty-five and thirty miles an hour. With one exception, the witnesses who testified for the city were members of the fire companies which are referred to above as having gone to the fire upon the alarm being given.

All the members of the companies involved testified that the sirens and bells of the apparatus and the marshal's automobile were being sounded continuously.

The defendant on the other hand, claimed that he left the viaduct at Eighth street, and proceeded south to Sixth with the green light displayed in his favor at all times; that he was traveling at about the rate of twenty-five miles an hour; that he did not see any fire apparatus cross Broadway ahead of him; that he did not hear any signals of any kind sounded, and did not know of the presence of the fire marshal until the instant of the collision.

The testimony as to the speed of the taxicab was corroborated by Miss Smith, who was a passenger and who testified for the city that his (defendant's) speed was thirty miles an hour, that she did not see any apparatus pass over Sixth street, at Broadway, but she says she did hear the siren or fire bells.

Another witness, Durham, who was in a restaurant at the northeast corner of Sixth and Broadway, testified that the defendant's speed was twenty miles an hour, and that he did not see a fire company pass the intersection immediately before the collision.

Mr. Piepmeyer, another witness, who was in an automobile standing at Sixth and Broadway, testified that the defendant's speed was thirty miles an hour, and that the engine company had passed, but it had passed more than a minute before the collision.

It will be seen that according to Piepmeyer's testimony, had the engine company passed a minute before the collision, going at the rate of speed shown, thirty miles an hour, it would have passed a considerable length of time before defendant came onto Broadway, for the reason that going twenty-five miles an hour as he says, the

engine company must have crossed Broadway before he turned into it.

The witness Werner, who was also in the restaurant referred to, testified that he heard the sirens sounded from time to time, but not continuously, then there was quiet for about a minute and then a crash.

It is in evidence that when the fire alarm is given the signal lights on the streets in the congested district are turned off and a warning bell sounded, which requires all persons to be on the lookout and proceed with caution. These lights had been off and the bells had been ringing, but some time before the collision, and while the companies were proceeding to the fire, which was only a block or two away from where the collision occurred, the bells had stopped ringing and the lights were again burning— as stated the green light displayed north and south and the red light east and west.

All of the disinterested witnesses in the case testified in contradiction of the witnesses for the city as to the speed of the defendant, as to the continuance of the siren and as to the claim that the engine company proceeded over the intersection about one hundred feet ahead of the marshal.

The city has control of the streets. It likewise passed the ordinances involved in this case. One of those ordinances gave the right of way to the defendant and one made Sixth street a one-way street west from Broadway.

The defendant had a right to assume, until he knew to the contrary, that the traffic would not move in violation of the ordinance, eastwardly on Sixth street towards Broadway. The city's employees, the firemen, proceeded eastwardly on Sixth street, contrary to the ordinance as to the one-way street, against the red light, and there was no testimony to show that the marshal did anything to check his automobile or to have it under control at the time.

Section 74-56 of the ordinances provides:

"Vehicles of the police department, fire department, the salvage corps and hospital ambulances shall at all times on emergency calls have the right of way on any street

and through any procession and through any railway train at street intersections. Such vehicles on emergency runs may proceed against red or amber lights *if driven in a careful manner, and if under full control.* Vehicles carrying United States mail shall have the right of way over other vehicles excepting those mentioned above in this paragraph. *None of these vehicles shall exceed the rates of speed authorized for other vehicles except in real emergency."*

The defendant in this case testified that he did not hear the fire signals, and he explained in his statement to the court that he was driving alongside of a very large garage located at the northwest corner of Sixth and Broadway, and that that may have accounted for not hearing, though Miss Smith, one of the passengers, said that she did hear the alarm. Both testified as stated that they did not see the engine company pass.

May one be found guilty of violating this ordinance where he was proceeding according to the lights upon the street, and having no reason to anticipate the driving of the marshal's vehicle in an easterly direction on a west-bound street, unless it be shown, or the circumstances would justify the inference that he knew that the marshal were approaching Broadway?

It is a well known fact that when the sirens and fire bells are rung upon the streets, it is very difficult to locate them unless they are in sight, and where this fact is coupled with the fact that the defendant was driving alongside of the large garage referred to, coming to the corner of Sixth street, even though he had heard the sirens, would he be expected to know or assume that the fire company was proceeding eastwardly on a westbound street and against the red light?

The ordinances give to the vehicles of the fire department the greatest privilege in using the streets in order to reach fires with all speed; however, both of these measures are in the interest of public safety, and there is not apparent in the Code of Ordinances any intention on the part of Council to give to the fire department the right to proceed in the wrong direction upon one-way

streets, across intersecting streets at full speed against signal lights which are set against them and in violation of the rights of all other citizens who may be led by the display of the signals into the belief that they have a right to go ahead.

The condition which caused the accident was created wholly by the employees of the city. Even assuming that the defendant were driving at a rapid rate of speed, that would not have justified the actions of the department at this time. Had he been driving a little slower the collision would likely have taken place, but his cab would have been struck at some other part.

On the subject of one-way streets the ordinance premits driving on those streets in the direction indicated, at any part of the street. On two-way streets vehicles are required to keep to the right of the center of the street except in emergencies.

If the fire department has a right to proceed on Sixth street contrary to the ordinance, and drive through lights as was done in this case, it would have the same right to proceed in the wrong direction on Shillito Place, Opera Place or any other street, broad or narrow, which is a one-way street.

To protect the pedestrians and drivers of vehicles upon the streets and thus accord them reasonable safety may be far more important than the saving of a minute of time by a fire department in reaching a fire.

It is significant in this case that the prosecuting attorney upon the trial, at the conclusion of all the evidence made the following statement:

"Of course I think there is something in this man's case, because if the bells would have been ringing I think he would —"

He was interrupted at this time by a statement of counsel for the defendant that if the lights had been out and the warning bells ringing this thing would never have occurred. Contrary to the general practice as above stated, the traffic lights were turned on before the fire department got out of the congested district approaching the fire.

The congested district is defined by Section 74-5 of the Code, and places the eastern boundary at the east property line of Broadway.

By stopping the ringing of the alarm bells at the corner and turning on the lights there was an invitation by the city, which had control of those lights, for north and south traffic to proceed.

In such a situation it seems a harsh interpretation of the law that one should be held to be guilty of reckless driving, especially in view of the fact that he had not seen any apparatus pass, he had no reason to believe that the fire marshal's automobile was proceeding eastwardly on this westbound street, and he did not hear the fire signals.

Though this is a prosecution for misdemeanor, the presumption of law is that the defendant is not guilty, and there can be no justification for his conviction unless it is proven beyond reasonable doubt that he is guilty of violating the law, which in this type of case required knowledge of certain facts on his part which it does not appear he possessed.

The judgment of the court is therefore, that the Municipal Court erred in the judgment convicting the defendant, and the judgment of that court will therefore be reversed.